IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No: 09-cv-02067-REB-CBS

ALPHONSO JAY WILLIAM[S],
        Applicant,
v.

ARISTEDES W. ZAVARA[S], Executive Director, and
The Attorney General of the State of Colorado, JOHN SUTHERS,
        Respondents.

---

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

Magistrate Judge Craig B. Shaffer

This civil action comes before the court on Mr. Williams' "Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254" ("Petition") filed *pro se* on August 31, 2009 (Doc. # 3).  Pursuant to the Order of Reference dated December 30, 2009 (Doc. # 14), this case was referred to the Magistrate Judge to, *inter alia*, "[p]rovide a report and recommendation with regard to the petition."  The court has reviewed the Petition, Respondent's "Answer to Application for Writ of Habeas Corpus" ("Answer") (filed January 25, 2010) (Doc. # 15), Mr. Williams' "Reply Brief" (filed February 19, 2010) (Doc. # 18), the pertinent parts of the state court record, the entire case file, and the applicable law and is sufficiently advised in the premises.  The court recommends that the Petition be denied and that this civil action be dismissed with prejudice.

I.      Statement of the Case

On or about April 8, 2004, Mr. Williams was convicted in Denver County District

1

Court case number 2002CR000809 on a jury verdict finding him guilty of "second degree kidnaping, aggravated robbery, false imprisonment, and two counts of menacing." (*See People v. Williams*, No. 04CA1865 (Colo. App. March 6, 2008) (not published pursuant to C.A.R. 35(f)) (Exhibit B to Respondents' Pre-Answer Response (Doc. # 7-3);  *see also* State Court Record Vol. One at pp. 158-63, 183-86, 190)).  Mr. Williams "was sentenced as an habitual offender by the trial court after it found him guilty beyond a reasonable doubt on five habitual criminal counts."  (*See People v. Williams*, No. 04CA1865 (Doc. # 7-3) at p. 4 of 18).  Mr. Williams "was sentenced to concurrent terms in the Department of Corrections as follows: ninety-six years for second degree kidnaping, sixty-four years for aggravated robbery, twelve years on each of the menacing counts, and one year for false imprisonment." (*See id.*;  *see also* State Court Record Vol. Sixteen at pp. 14-15).

On March 6, 2008, the Colorado Court of Appeals affirmed the judgment of conviction on direct appeal.  (*See People v. Williams*, No. 04CA1865 (Doc. # 7-3)).   On June 23, 2008, the Colorado Supreme Court denied certiorari review.  (*See* Exhibit C to Respondents' Pre-Answer Response (Doc. # 7-4)).  The Colorado Court of Appeals issued the mandate on July 9, 2008.  (*See* State Court Record Vol. One (no page no.);  *see also*  Exhibit A to Respondents' Pre-Answer Response (register of actions) (Doc. # 7-2) at p. 15 of 17).

On October 20, 2008, Mr. Williams filed through counsel "Motion for Sentence Reconsideration. . ." pursuant to Colorado Rule of Criminal Procedure 35(b).  (*See* State Court Record Vol. One (no page no.);  Exhibit A to Respondents' Pre-Answer Response (Doc. # 7-2) at p. 16 of 17).  The trial court denied the Motion on October 28,

2008.  (*See id.*).  On May 26, 2009, Mr. Williams filed *pro se* a "Petition for

Postconviction Relief Pursuant  to Rule 35(c)" of the Colorado Rules of Criminal

Procedure, alleging ineffective assistance of trial counsel.  (*See* State Court Record Vol.

One (no page no.)).  On June 23, 2009, the trial court denied Mr. Williams'

postconviction motion.  (*See id.*).  There is no record that Mr. Williams sought appellate

review of the trial court's denial.  (*See* Doc. # 7-2).

        On August 25, 2009, Mr. Williams submitted the instant Petition, which the court

filed on August 31, 2009.  On December 17, 2009, the court dismissed all portions of

Claim One except "the Confrontation Clause portion . . . that he was denied an

opportunity to confront the police officer about his collection of the samples from blood

found as the crime scene because the officer did not testify."  (*See* "Order to Dismiss in

Part and to Draw Case to a District Judge and to a Magistrate Judge" (Doc. # 11)).  The

court also dismissed Mr. Williams' Claim Four, partially based on failure to raise a

federal constitutional issue and partially based on procedural default.  (*See id.*).  Thus,

the claims remaining before the court are that: (1) Mr. Williams was deprived of an

opportunity to confront a police officer about his collection of a sample from blood found

at the scene of the crimes because the officer had retired from the police department

and did not testify;  (2) while there was probable cause to believe crimes had been

committed, the trial court erroneously denied Mr. Williams' motion to suppress DNA

blood evidence from a personal sample obtained against his will, based on a supporting

affidavit that did not set forth reasonable grounds to believe that he committed the

crimes; and (3) the trial court's failure to provide the jury with definitions of the terms

deadly weapon, firearm, bodily injury, and serious bodily injury deprived Mr. Williams of

his right to a jury finding of guilt beyond a reasonable doubt on all the essential elements of the menacing and aggravated robbery counts.  (*See* Doc. # 11).


II.      One-Year Limitation Period for Filing Application for Federal Habeas Relief

Respondents do not challenge the timeliness of the Petition under the one-year limitation period set forth in 28 U.S.C. § 2244(d)(1).  (*See* Answer (Doc. # 15) at p. 7 of 31).


III.     Exhaustion of State Remedies and Procedural Default

"A threshold question that must be addressed in every habeas case is that of exhaustion." *Harris v. Champion*, 15 F.3d 1538, 1554 (10th Cir. 1994).  Before a state prisoner may raise a federal constitutional claim attacking his state conviction in a federal habeas corpus proceeding pursuant to 28 U.S.C. § 2254, he or she must have first exhausted state remedies and provided the state courts with a fair opportunity to apply controlling legal principles to facts bearing on the constitutional claims.  28 U.S.C. § 2254(b)(1).  Respondents concede that Mr. Williams exhausted the claims that remain before the court.  (*See* Respondents' Answer (Doc. # 15) at p. 7 of 31 ("state remedies for the three habeas claims that this Court ordered Respondents to answer have been exhausted")).


IV.      Standard of Review

Mr. Williams filed this habeas proceeding after the April 24, 1996 effective date of the Antiterrorism and Effective Death Penalty Act ("AEDPA").  Consequently, federal

review of the Petition is governed by the standards set out in 28 U.S.C. § 2254(d), as

amended by the AEDPA.  *See Price v. Vincent*, 538 U.S. 634, 638 (2003) ("A habeas

petitioner whose claim was adjudicated on the merits in state court is not entitled to

relief in federal court unless he meets the requirements of 28 U.S.C. § 2254(d)").

Section 2254(d) provides that a writ of habeas corpus may not be issued with respect to

any claim that was adjudicated on the merits in state court unless the state court

adjudication:

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the State
> court proceeding.

28 U.S.C. 2254(d).  The Supreme Court has construed the language of § 2254(d)(1):

> . . . a decision by a state court is "contrary to" our clearly established law if
> it "applies a rule that contradicts the governing law set forth in our cases,
> or if it "confronts a set of facts that are materially indistinguishable from a
> decision of this Court and nevertheless arrives at a result different from
> our precedent. . . ."

*Price*, 538 U.S. at 640.  In determining whether the state court decision "involved an

unreasonable application of clearly established Federal law" under § 2254(d)(1),

> a federal habeas court may not issue the writ simply because that court
> concludes in its independent judgment that the state-court decision
> applied [a Supreme Court case] incorrectly. Rather, it is the habeas
> applicant's burden to show that the state court applied [that case] to the
> facts of his case in an objectively unreasonable manner."

*Price*, 538 U.S. at 640-41 (internal quotation marks and citations omitted).

The Supreme Court has interpreted § 2254(d)(2) to mean that "a decision

adjudicated on the merits in a state court and based on a factual determination will not

be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockerell*, 537 U.S. 322, 340 (2003). When applying § 2254(d)(2), "the factual issues decided by the [state] court are presumed to be correct and [Mr. Williams] bears the burden of rebutting this presumption by clear and convincing evidence." *Le v. Mullin*, 311 F.3d 1002, 1010 (10th Cir. 2002) (citing 28 U.S.C. § 2254(e)(1)). *See also Foster v. Johnson*, 293 F.3d 766, 776-77 (5th Cir. 2002) ("To establish that habeas relief is warranted on the § 2254(d)(2) ground . . . a petitioner must rebut by clear and convincing evidence the § 2254(e)(1) presumption that a state court's factual findings are correct.") (citations omitted).

V.      Analysis

A.      Claim One

In the remaining portion of Claim One, Mr. Williams alleges that he was deprived of an opportunity to cross-examine at trial Detective Hoffman, the police officer who collected a sample of blood found at the crime scene. On direct appeal, Mr. Williams asserted a violation of his constitutional right to confront the non-testifying police officer, along with arguments regarding authentication, foundation, and chain of custody. (*See* Exhibit D to Respondents' Answer (Doc. # 7-5) at pp. 3, 8, 16-22 of 48).

The Colorado Court of Appeals addressed Mr. Williams' claim on direct appeal.

On August 22, 2001, an African-American male, accompanied by an African-American female, robbed an Advance America payday loan business. The male pointed a gun at M.K., the manager of the business, who was behind a counter, demanding that M.K. empty the business's safe and told to lie down on the ground. An armed security guard who

6

was at the back of the office heard the commotion and confronted the male robber as he was leaving the business. The security guard fired two shots. One hit the business's front glass window.

Eyewitnesses testified that an African-American male and an African-American female were seen leaving the business in either a gold or tan-colored sedan. Additionally, fresh blood stains were found on the sidewalk in front of the business.

A DNA profile matched the blood obtained from the crime scene with blood obtained from defendant through a nontestimonial identification court order.

* * *

[S]amples of blood were collected from the crime scene by Detective Hoffman, the sole detective from the police department's crime laboratory assigned to gather evidence for the investigation of the case. Because Detective Hoffman subsequently retired from the police force, the People were unable to produce his testimony at trial.

Additionally, prior to trial defendant was subjected to a blood draw for nontestimonial identification pursuant to Crim. P. 41.1. The results of a DNA comparison test, showing a DNA profile match between the blood samples from the crime scene and defendant's nontestimonial identification blood draw, were admitted into evidence.

* * *

The People put on officer testimony establishing that Detective Hoffman was at the scene of the crime and was the crime laboratory detective responsible for collecting evidence. One officer testified that he saw Detective Hoffman collecting evidence from the crime scene.

[T]he People were unable to establish that any of the officers on the scene actually witnessed Detective Hoffman collecting the bloodstain evidence. The People further could not establish that the bloodstain evidence collected from the crime scene was thereafter submitted and filed in the police department's property bureau. However, the People elicited testimony concerning the proper procedures for documenting evidence collected from a crime scene. Specifically, an officer established that evidence collected from a crime scene is assigned a property invoice number when the evidence is submitted to the property bureau, and the evidence is assigned a crime laboratory number if the evidence is to be subjected to testing by the crime laboratory.

* * * Detective Martinez, the lead detective on the case, testified that he requested crime laboratory testing of the blood evidence obtained from the crime scene. The laboratory request form identified both the crime laboratory number and the property invoice number assigned to the blood evidence. The forensic serologist assigned to this case also testified that she obtained the laboratory request, authorized by Detective

Martinez, and thereafter retrieved from the property bureau the blood evidence that was submitted to the bureau under the property invoice number identified on the laboratory request.

* * *

Thus, though Detective Hoffman was unavailable to testify that the blood evidence he collected was properly documented and submitted to the property bureau, the People sufficiently established a proper foundation that the blood evidence used in the DNA comparison testing was the actual blood evidence collected from the crime scene.

(*See* Doc. # 7-3 at pp. 3, 5-8 of 18).  The Colorado Court of Appeals did not address the merits of Mr. Williams' argument regarding his right to confront the non-testifying police officer.  (*See* Doc. # 7-3).  Therefore, this court must make "its own determination in the first instance" of this claim.  *Smith v. Workman*, 550 F.3d 1258, 1264 (10th Cir. 2008) (citation omitted).  *See also Wilson v. Workman*, 577 F.3d 1284, 1296 (10th Cir. 2009) ("While AEDPA . . . requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with clear and convincing evidence, that principle . . .  does not suggest that such deference is applicable when the state court has failed to consider the full merits of the claim." (internal quotation marks and citation omitted);  *LaFevers v. Gibson*, 182 F.3d 705, 711 (10th Cir. 1999) ("If the claim was not heard on the merits by the state courts, and the federal district court made its own determination in the first instance, we review the district court's conclusions of law de novo and its findings of fact, if any, for clear error.").

"The Sixth Amendment to the United States Constitution, made applicable to the States via the Fourteenth Amendment, provides that [i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."

8

*Melendez-Diaz v. Massachusetts*, 129 S. Ct. 2527, 2531 (2009) (internal quotation marks and citations omitted).  "In *Crawford*, after reviewing the [Confrontation] Clause's historical underpinnings, we held that it guarantees a defendant's right to confront those who bear testimony against him."  *Melendez-Diaz*, 129 S. Ct. at 2531 (citing *Crawford v. Washington*, 541 U.S. 36, 51 (2004)).  "A witness's testimony against a defendant is thus inadmissible unless the witness appears at trial or, if the witness is unavailable, the defendant had a prior opportunity for cross-examination."  *Id.* at 54.

"The text of the Confrontation Clause . . . applies to witnesses against the accused – in other words, those who bear testimony."  *Crawford*, 541 U.S. at 51 (internal quotation marks and citations omitted).  "Testimony, in turn, is typically [a] solemn declaration or affirmation made for the purpose of establishing or proving some fact."  *Id.*  The Court in *Crawford* "described the class of testimonial statements covered by the Confrontation Clause."  *Melendez-Diaz*, 129 S. Ct. at 2531.

> Various formulations of this core class of testimonial statements exist: ex parte in-court testimony or its functional equivalent-that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially, extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions, statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.

*Crawford*, 541 U.S. at 51-52 (internal quotation marks and citations omitted).  "Whatever else the term [testimonial] covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations. These are the modern practices with closest kinship to the abuses at which the

Confrontation Clause was directed."  *Crawford*, 541 U.S. at 68.

While leaving "for another day any effort to spell out a comprehensive definition of 'testimonial,' " the Court stated that "[w]here nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law – as does *Roberts*, and as would an approach that exempted such statements from Confrontation Clause scrutiny altogether." *Crawford*, 541 U.S. at 68.  "Thus, the stringent requirement of confrontation resurrected in *Crawford* does not apply to non-testimonial evidence."  *United States v. Hagege*, 437 F.3d 943, 958 (9th Cir. 2006).  *See also Davis v. Washington*, 547 U.S. 813, 821-26 (2006) (holding that nontestimonial hearsay is not subject to the Confrontation Clause).

The evidence regarding collection of a blood sample at the scene of the crimes does not fall within the "core class of testimonial statements" described by the Supreme Court.  *See Crawford*, 541 U.S. at 51-52.  It was Detective Hoffman's "responsibility to collect, process, and preserve the evidence collected at the scene."  (*See* Mr. Williams' Amended Opening Appellate Brief (Doc. # 7-5 at pp. 15-22 of 48)).  No oral or written statements of Detective Hoffman were presented to the jury.  He bore no testimony as a witness against Mr. Williams.  The evidence at trial was limited to what the witnesses observed Detective Hoffman did to collect the blood sample at the scene of the crimes and what were the standard procedures for handling blood sample evidence.  Defense counsel amply cross-examined the witnesses on these matters.  (*See* State Court Record Vol. Twelve at pp. 96-98, 108-18, 121-24, 181-88, 238-43, 267-71, 278).  Witnesses other than Detective Hoffman performed serology tests on the blood sample and testified at trial subject to cross-examination.  (*See* State Court Record Vol. Twelve

10

at pp. 181-88, 194-232).  Because the evidence at issue is not testimonial in nature, the

Confrontation Clause is not implicated.  *See, e.g., Mason v. Yarborough*, 447 F.3d 693,

696 (9th Cir. 2006) ("Because Fenton's words were never admitted into evidence, he

could not 'bear testimony' against Mason.").  Mr. Williams is not entitled to habeas relief

on Claim One.


B.      Claim Two

        Mr. Williams alleges the district court erroneously denied his motion to suppress

blood draw evidence obtained pursuant to Crim. P. 41.1 because the affidavit in support

of the nontestimonial identification procedure failed to establish reasonable grounds to

suspect he committed the crimes.

        On September 22, 2001, one month after the robbery, the District Attorney filed a

Motion for Non-Testimonial Identification for a blood sample from Mr. Williams.  (*See*

State Court Record Vol. One at p. 120).  In support of the Motion, the District Attorney

submitted the eight-page Affidavit of Detective Martin Martinez that included detailed

information about the robbery.  (*See* State Court Record Vol. One at pp. 121-28).  "A

county court judge thereafter signed the People's affidavit, ordering that defendant

submit to a blood draw."  (*See People v. Williams* (Doc. # 7-3) at p. 10 of 18).  On

March 23, 2004, defense counsel filed a written motion to suppress evidence that

resulted from comparison of Mr. Williams' blood sample with the blood recovered from

the crime scene.  (*See* State Court Record Vol. One at pp. 116–18, Vol. Ten at pp.

5–8).  On April 5, 2004 the trial court determined that there were reasonable grounds to

suspect that Mr. Williams committed the offense and denied the motion to suppress.

(*See* State Court Record Vol. Ten at pp. 10-16; Crim. P. 41.1).

On direct appeal, the Colorado Court of Appeals concluded that "specific and articulable facts establish[ed] reasonable suspicion to believe that defendant committed the robbery at issue in this case and thus justified the affidavit in support of the People's motion for nontestimonial identification of defendant." (*See* Doc. # 7-3 at pp. 11 of 18).

> When reviewing a suppression order, we defer to the trial court's findings of fact, but analyze the trial court's application of legal standards to those facts de novo. *See People v. Diaz*, 53 P.3d 1171, 1175 (Colo. 2002).

> Crim. P. 41.1 authorizes the issuance of a court order for nontestimonial identification upon an affidavit establishing that (1) there is probable cause to believe an offense has been committed; (2) there are reasonable grounds, not amounting to probable cause to arrest, to suspect that the person named or described in the affidavit committed the offense; and (3) the results of the nontestimonial identification procedures will materially aid in the determination of whether the person named in the affidavit committed the offense. See Crim. P. 41.1(c). Identification by blood specimen evidence constitutes nontestimonial identification. See Crim. P. 41.1(h).

> * * *

> The "reasonable grounds to suspect" standard is synonymous with the "reasonable suspicion to believe" standard and requires a lower quantum of proof than probable cause. *See People v. Davis*, 669 P.2d 130, 134 (Colo. 1983). Thus, the standard applicable here is whether specific and articulable facts, taken together with rational inferences from these facts, establish reasonable grounds to suspect that the defendant has committed the crime for which the nontestimonial identification evidence is sought. *See id.* In making this determination, we must consider the totality of the circumstances recounted in the affidavit. See id.

> At the hearing on defendant's motion to suppress the blood draw evidence, the trial court considered the physical description of the male suspect identified in the affidavit. The trial court found that the affidavit demonstrated that several eyewitnesses similarly characterized the male suspect's height, weight, and race. Additionally, the affidavit stated that several eyewitnesses provided consistent descriptions of a gold-colored get-away car, with temporary tags, driven by the male suspect after the Advance America business had been robbed. The trial court also noted that the affidavit stated that warrants were issued for defendant and his female companion in connection with another suspected robbery.

(*See* Doc. # 7-3 at pp. 9-11 of 18).

Mr. Williams claims that the blood draw violated his Fourth Amendment rights. (*See* Doc. # 3 at p. 11 of 37).  "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."  *Stone v. Powell*, 428 U.S. 465, 481-82 (1976).  *See also United States v. Cook*, 997 F.2d 1312, 1317 (10th Cir. 1993) ("it is clear that the Court intends for Fourth Amendment claims to be limited in § 2255 proceedings as they are limited in § 2254 proceedings -- *i.e.*, to be addressed only if a defendant has not had a full and fair opportunity to raise the claims at trial and on direct appeal.").  The opportunity for full and fair consideration "further "contemplates recognition and at least colorable application of the correct Fourth Amendment constitutional standards.' "  *Cannon v. Gibson*, 259 F.3d 1253, 1261 (10th Cir. 2001) (quoting *Gamble v. State of Oklahoma*, 583 F.2d 1161, 1165 (10th Cir. 1978).

First, the state court proceedings sufficed to provide Mr. Williams with an opportunity for full and fair litigation of this claim.  The trial court held a hearing prior to the trial at which Mr. Williams was represented by counsel.  (*See* State Court Record Vol. Ten at pp. 10-16).  The trial court denied Mr. Williams' motion to suppress.  On direct appeal, the Colorado Court of Appeals affirmed the trial court and the Colorado Supreme Court denied Mr. Williams' petition for writ of certiorari.  This procedural history demonstrates that the state court proceedings sufficed to provide Mr. Williams with an opportunity for full and fair litigation of this claim.

Second, Mr. Williams has not provided any grounds to conclude that the state

courts "wilfully refuse[d] to apply the correct and controlling constitutional standards."

*Gamble*, 583 F.2d at 1165.  The record supports the trial and appellate courts'

determinations that specific and articulable facts established reasonable suspicion to

believe that Mr. Williams committed the offenses at issue.  In reviewing the trial court's

ruling, the Colorado Court of Appeals relied on *People v. Davis*, 669 P.2d 130, 134

(Colo. 1983).  (*See* Doc. # 7-3 at p. 10 of 18).  The ruling in *Davis* was based in Fourth

Amendment precedent as announced by the United States Supreme Court.  *See Davis*,

669 P.2d at 134 (citing *People v. Madson*, 638 P.2d 18, 31–33 (Colo. 1981) (upholding

constitutionality of Colo. R. Crim. P. 41.1 based on United States Supreme Court

precedent and concluding nontestimonial identification's limited intrusion into privacy

upon less than probable cause to arrest does not violate the Fourth Amendment)).

*Accord, People v. Harris*, 762 P.2d 651, 653–56 (Colo. 1988) ("While the United States

Supreme Court has never expressly addressed the constitutionality of such procedures,

it has reaffirmed that the [F]ourth [A]mendment may permit procedures similar to those

in Crim. P. 41.1.") (citations omitted).

In the absence of any contrary ruling from the United States Supreme Court, it

cannot be said that the Colorado courts have failed to apply the correct Fourth

Amendment constitutional standards.  *See House v. Hatch*, 527 F.3d 1010, 1015–16

(10th Cir. 2008) ("[T]he threshold determination that there is no clearly established

federal law is analytically dispositive in the § 2254(d)(1) analysis. That is, without clearly

established federal law, a federal habeas court need not assess whether a state court's

decision was "contrary to" or involved an "unreasonable application" of such law.)

It being clear that Mr. Williams had a full and fair opportunity to litigate his Fourth

Amendment claim in state court, his Fourth Amendment claim is not cognizable in this §

2254 Petition.  Mr. Williams is not entitled to habeas relief on Claim Two.


C.    Claim Three

Mr. Williams alleges that his convictions for aggravated robbery and menacing

must be vacated because the trial court failed to provide the applicable definitions of

deadly weapon, firearm, bodily injury, and serious bodily injury.  (*See* Petition at pp. 11,

17 of 37).

The trial court instructed the jury on the elements of aggravated robbery and

menacing, tracking the language of the applicable statutes and pattern instructions

without objection by the defense.  (*See* State Court Record Vol. One at pp. 150, 153;

Vol. Thirteen at pp. 5–12).  Mr. Williams did not request and the trial court did not

provide definitions of the terms deadly weapon, firearm, bodily injury, or serious bodily

injury.  (*See* State Court Record Vol. One at pp. 134–55;  Vol. Twelve at pp. 299–301;

Vol. Thirteen at pp. 5–12).

On direct appeal, the Colorado Court of Appeals rejected Mr. William's claim.

> Defendant contends his convictions must be reversed because the
> trial court did not define the terms "deadly weapon," "serious bodily injury,"
> or "bodily injury" as part of the jury instructions on aggravated robbery and
> menacing. Again, we disagree.
> A trial court has a duty to instruct the jury correctly on the law
> applicable to the case. *People v. Whaley*, 159 P.3d 757, 758 (Colo. App.
> 2006).
> Defendant did not request the trial court to give instructions defining
> the terms "deadly weapon," "serious bodily injury," or "bodily injury," nor
> did he object to the instructions given providing the elements of
> aggravated robbery and menacing. When, as here, no contemporaneous
> objection is made, appellate review is limited to determining whether the
> omission of instructions defining the terms "deadly weapon," "serious

bodily injury," and "bodily injury" constitutes plain error. *See* Crim. P. 52(b); *People v. Miller*, 113 P.3d 743, 750 (Colo. 2005).

Plain error is error, both obvious and substantial, that so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction. Miller, 113 P.3d at 750.

A trial court's failure to instruct a jury on the essential elements of an offense constitutes plain error. *See People v. Fichtner*, 869 P.2d 539, 543 (Colo. 1994). However, an erroneous instruction on an element of an offense does not rise to the level of plain error where that element is not at issue at trial. See id.

Here, the trial court correctly instructed the jury on the elements of aggravated robbery, patterned after CJI-Crim. 15:06 (1993), in part as follows:

1. That the defendant,
2. in the City and County of Denver, State of Colorado, on or about August 22, 2001,
3. knowingly,
4. took anything of value,
5. from the person or presence of [M.K.],
6. by the use of force, threats, or intimidation, and
7. during the act of robbery or the immediate flight therefrom,
8. knowingly,
9. put the person robbed, or any other person, in reasonable fear of death or bodily injury,
10. by the use of force or threats or intimidation,
11. with a deadly weapon.

The trial court also correctly instructed the jury on the elements of menacing, patterned after CJI-Crim. 10:16 (1993), in part as follows:

1. That the defendant,
2. in the City and County of Denver, State of Colorado, on or about August 22, 2001,
3. by threat or physical action,
4. knowingly placed or attempted to place another person in fear of imminent serious bodily injury,
5. by the use of a deadly weapon.

We agree that the jury should have received instructions defining the terms "deadly weapon," "serious bodily injury," and "bodily injury." *See* CJI-Crim. 15:06, 10:16; *see also Fichtner*, 869 P.2d at 543 (noting that jury should have been instructed on definition of serious bodily injury in relation to menacing charge).

However, neither the use of a deadly weapon nor the placing of a person in fear of bodily injury or serious bodily injury was an issue at trial. M.K. testified that a male entered the Advance America business and pointed a gun at him demanding that M.K. empty the cash drawer at the

business.  He further testified that the male ordered him to lie down on the
ground after he complied with the demands.  Although M.K. was unable to
identify defendant, the security guard identified defendant at trial as the
robber.  The security guard, who is certified in firearms, also testified that
the robber was carrying a "pocket pistol."

Further, defendant did not dispute the use of a deadly weapon at
trial. Rather, defendant's theory of defense was that he was not the male
robber.

Accordingly, we conclude the trial court's failure to instruct the jury
on the definitions of "deadly weapon," "serious bodily injury," and "bodily
injury" does not constitute plain error because neither the use of a deadly
weapon during the robbery nor the placement of M.K. in fear of serious
bodily injury or bodily injury was contested at trial.  *See Fichtner*, 869 P.2d
at 544.

(*See* Doc. # 7-3 at pp. 11–15 of 18).

"A § 2254 petitioner has a heavy burden in attempting to set aside a state

conviction based on an erroneous jury instruction."  *Nguyen v. Reynolds*, 131 F.3d

1340, 1357 (10th Cir. 1997).  "[T]he fact that [an] instruction was allegedly incorrect

under state law is not a basis for habeas relief."  *Estelle v. McGuire*, 502 U.S. 62, 71-72

(1991).  "[T]he question in such a collateral proceeding is whether the ailing instruction

by itself so infected the entire trial that the resulting conviction violates due process, not

merely whether the instruction is undesirable, erroneous or even universally

condemned."  *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977) (internal quotation marks

and citations omitted).  *See also Nguyen*, 131 F.3d at 1357 ("As a general rule, errors in

jury instructions in a state criminal trial are not reviewable in federal habeas corpus

proceedings, unless they are so fundamentally unfair as to deprive petitioner of a fair

trial and to due process of law.") (quotation omitted).  This burden in a habeas

proceeding is "even greater than the showing required to establish plain error on direct

appeal."  *Henderson*, 431 U.S. at 154.  " 'An omission, or an incomplete instruction, is

less likely to be prejudicial than a misstatement of the law.' " *Spears v. Mullin*, 343 F.3d 1215, 1244, (10th Cir. 2003) (quoting *Henderson*, 431 U.S. at 155).  Mr. Williams' already heavy burden is even heavier because he failed to object to the jury instructions at trial.  *See Henderson*, 431 U.S. at 154 ("[i]t is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court").

The Colorado Court of Appeals determined that the trial court correctly instructed the jury on the elements of aggravated robbery and menacing.  (*See* Doc. # 7-3 at p. 13 of 18).  While the court "agree[d] that the jury should have received instructions defining the terms "deadly weapon," "serious bodily injury," and "bodily injury," in applying the standard whether the challenged instructions undermined "the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction," it found no plain error.  (*See* Doc. # 7-3 at pp. 12-15 of 18).  The court concluded that "neither the use of a deadly weapon during the robbery nor the placement of [the victim] in fear of serious bodily injury or bodily injury was contested at trial."  (*See* Doc. # 7-3 at pp. 14-15 of 18).

The state courts' rulings did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. 2254(d).  At trial, Mr. Williams did not dispute the use of a deadly weapon.  Mr. Williams' theory of defense at trial was that he was not the male robber.  (*See* State Court Record Vol. Thirteen at pp. 22–30).  The Advance America

18

employee referred to the weapon as a "gun," and the security guard described it as a "pocket pistol." (*See id.* Vol. Twelve at pp. 49–50, 53, 83).   While Mr. Williams requested and received an instruction on the lesser-included offense of aggravated robbery with a simulated weapon, defense counsel did not cross-examine either witness about the weapon, and he did not argue it was a toy gun.  (*See id.* Vol. One at pp. 151-52;  Vol. Twelve at pp. 61–70, 90–98;  Vol. Thirteen at pp. 5–9, 11-12, 22–30).   The only mention defense counsel made of the weapon was directed to identity, when he argued the right-handed defendant would not have held the weapon with his left hand as the robber did.  (*See id.* Vol. Thirteen at pp. 28–29).   As indicated by defense counsel's closing argument, neither the reasonable fear of bodily injury required by the aggravated robbery charge nor the fear of imminent serious bodily injury required by the menacing offense were contested at trial.  (*See id.* Vol. Twelve at pp. 61–70, 90–98;  Vol. Thirteen at pp. 22–30).   Even if this court "were to make the unlikely assumption that the jury might have reached a different verdict pursuant to an additional instruction, that possibility is too speculative to justify the conclusion that constitutional error was committed."  *Henderson*, 431 U.S. at 157.  *See also United States v. Weatherly*, 525 F.3d 265, 270-71 (3d Cir. 2008) (finding no prejudice where omission of proposed "mere presence" instruction was not relevant or applicable to the Government's allegation in the case of "actual possession");  *United States v. Garza-Juarez*, 992 F.2d 896, 910 (9th Cir. 1993) (concluding district court did not plainly err in failing to define "possession" where issue was not contested at trial);  *United States v. Hall*, 44 Fed. Appx. 532, 536 (3d Cir. 2002) (finding district court did not err in omitting definition of "knowingly," where issue was whether defendant had a firearm in his waistband not

whether he knew that he had a firearm there"); *Staples v. King*, 2010 WL 3893614 *6-9 (D. Minn. Sept. 14, 2010) (holding state trial court did not plainly err in failing to adequately define "assault" and "intent," where "petitioner's defense did not hinge on the legal definition of "assault" and "intent" and petitioner's "intent to cause bodily harm . . . was not the issue in the case).[1]  In sum, Mr. Williams is not entitled to habeas relief on Claim Three.

Accordingly, IT IS RECOMMENDED that the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Petition") filed on August 31, 2009 (Doc. # 3) be DENIED and that this civil action be DISMISSED with prejudice.

**Advisement to the Parties**

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b);  *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street,*

---

[1]      Copies of unpublished decisions cited are attached to this Recommendation.

*Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");  *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling);  *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated at Denver, Colorado this 27th day of April, 2011.

BY THE COURT:


 s/Craig B. Shaffer
United States Magistrate Judge